May it please the Court, my name is Austin England and I represent the plaintiffs and the appellants in this case, Pamela McCarty and Nick McCarty. We're asking the Court to The district court determined that the McCartys had failed to establish that Hillside, which operates a restaurant called Houston's, which I'll probably refer to it as Houston's, had actual knowledge of the unidentified substance on the floor at the restaurant. The district court also determined that the McCartys failed to raise a genuine issue of material fact as to whether or not Hillstone had constructive knowledge of the unidentified substance on the floor. We're seeking remand in this case to go back to the district court to try this case on its facts. The facts in this case are very simple. This is a slip and fall case. Pamela and Nick McCarty had been eating at Houston's with their friends for Valentine's Day. Pamela was on crutches as the result of a previous accident that had occurred out in California six months earlier, so she knew how to use crutches. Pamela needed to visit the restroom at the Houston's, and in order to get to the restroom, she had to walk across, and this is undisputed, she had to walk across a tiled area in the restaurant. That tiled area was right outside the kitchen, was right outside the bathroom, and it was right outside of the service area for the bar. This is all found in the record. Ms. McCarty's crutch slipped while she was walking across that tiled area on a sticky, slick, greasy floor outside of the kitchen. One of the witnesses who came to the area, Ms. Westfall, Valerie Westfall, testified in her deposition that she noticed water or other liquids splattered across the floor outside of the kitchen area where Ms. McCarty fell. Mr. McCarty, when he came to her aid, to Pamela McCarty's aid, testified that throughout the tiled area there were pieces of lettuce and that there were water droplets scattered throughout that area. Ryan Beard, the manager of the Houston's restaurant, said that it was certainly possible for Houston's employees to track food and water into the area where she fell and for liquid to have sloshed from glasses onto the tiled area. Houston, Mr. Beard and Mr. Greer, who is also a Houston's employee, testified that employees were constantly going through this area. At least 12 to 13 employees were going through this area every two to three minutes. This tiled area that was slick and greasy and wet, all of that is undisputed. And as I said, both of the employees that testified about how much traffic was going through the area simply by the Hillstone employees were Hillstone employees that made those observations. But the — doesn't the Texas Supreme Court require you to produce evidence that — this is a direct quote — that the condition existed long enough for the restaurant to discover it through reasonable inspection? Absolutely. Not just that the condition existed, but that it had been there long enough to satisfy that. So what evidence have you come forward with to satisfy that requirement? Your Honor, I believe that this is the evidence. When you have — and as I testified — or as I said earlier, when you have Hillstone employees, restaurant employees, that testify that there are 12 to 13 of their own employees walking through this area every two to three minutes, and it is undisputed, the evidence is clear in the record, and it's clear from what the Court said in its opinion, that there was a substance on the floor. Or that there was constructive knowledge of the substance on the floor. So there was a substance on the floor without a doubt. Likewise, there was — you have the Hillstone employees testifying that every two to three minutes they're circulating through that area. Likewise, you have undisputed testimony that the floor was slick, that it was greasy, that it was sticky, that there were wet spots all over the floor where Ms. McCarty fell. That in and of itself, when you've got somebody going through that area every two to three minutes, and it is undisputedly slick and greasy, that's evidence that that condition has been on the floor long enough for those employees that are walking across it every two to three minutes to notice it. You're just saying that's enough evidence to get you to trial? Absolutely. Because, Your Honor, this is not like a Berkshire's case or a Wal-Mart case where you've got a grocery aisle and there's a grape that's been dropped or some water spilled on there. And it's a long way away, and employees walking through briskly during their jobs may or may not be able to see that. These employees were on this slick floor every two to three minutes. That's certainly enough time for them to be able to take and acknowledge. I'm sorry? What was the substance on the floor? Well, the substance, that's a good question, Your Honor. It's undisputed that the floor was greasy. It's undisputed that there were water droplets in the area. It's undisputed that Mr. McCarty saw lettuce in the area. Those things are all undisputed. So exactly what substance of the... Did he say he saw lettuce or he thought he saw lettuce? I'm sorry? Did he say he saw lettuce or he thought he saw lettuce? Your Honor, I can find it in the record, but... Well, I'm just asking. My recollection is that he said he saw lettuce on the floor. Now, with all of these things in play, this area is right outside of the kitchen area where, as I said, Mr. Beard, the manager for the restaurant, said it is certainly possible that water and all these things, water and food could be tracked out of the kitchen, drinks could be sloshed, things could fall on the floor in this area. Do we know that the evidence that indicates that management not only had knowledge of it, but had such knowledge of it that they could have cleaned it up in a timely fashion? Your Honor, again, I come back to the fact that, number one, this is right outside of the kitchen area in a tiled area that employees, including management, are circulating through every two to three minutes. That's, I mean, that's an extraordinary rate. Did they say when that occurred? In other words, the witnesses that testified that it was a substance, an oily substance on the floor, testified whether it had been there all night, whether it had just been there or was only there when she fell, or any kind of time consequence, time sequence about that? There was no time frame that I recall. In other words, there was no testimony that anybody saw somebody spill grease on the floor. There was no testimony that anybody saw somebody spill a Coke on the floor or a beer or water or anything else on the floor. So you're agreeing it's undisputed what the substance was. I mean, it's undisputed that no one knew what the substance was on the floor. You agree to that, don't you? No one knew exactly what the substance was except for greasy. I mean, in other words— But we got greasy, we got sticky, we got water, we got maybe I saw lettuce. But greasy doesn't come from Coke. Greasy comes from grease right outside the kitchen, Your Honor. I can agree that grease is greasy. But what I'm telling you is we don't have any agreement about what a substance was on the floor. Isn't that right? I mean, you got different accounts from different witnesses about what was on the floor. We have Ms. McCarty, and this may be a long way of answering your question. We have Ms. McCarty saying that there was a greasy substance on the floor, a wet substance on the floor, and a sticky substance on the floor. Which she obviously didn't see, or she wouldn't have stepped in it. That would be my conclusion. All right. But your argument, though, is that these employees of Houston's should have seen it. That's exactly right. They were walking through this area every two to three minutes. With the floor in the condition— And since we don't know what it was on the floor, we don't know how it got there, do we? Well, Your Honor, it doesn't really—it would matter— Well, if you know how it got there, just go ahead and tell me. I don't have a clue how it got there. All right. My guess, my supposition is that it—and it's a reasonable inference that it came from the kitchen. So the how is we don't know how it got there. Who put it there? Do we know who put it there? Again, Your Honor, we don't know exactly who put it there. But again, we've got—we're talking about grease. We're talking about a greasy—that's undisputed. Greasy and sticky. Greasy and sticky. But, you know, when you say Coke, you know, when you spill a Coke, that's sticky, but you can also put a crutch in it and slip out on it. That's not hard to do. Let's see what we don't know. We don't know how it got there. Right? There's a reasonable inference that it came from the kitchen, though, Your Honor. We don't know who put it there. That's correct. All right. And we agree, as Judge Smith has pointed out, that there's got to be this long enough for Houstons to have known. So we need to know something about when. We don't know who. We don't know how. Do we know when it got there? But, Your Honor, if people are going through this area every two to three minutes, and this is an area right outside of the kitchen where we know grease comes from in a restaurant— So it could have been there for a minute? It could have been there. We have no—the evidence that we have is that it was there, that it was on the floor. We have evidence also from a Houstons employee, Mr. Greer— It could have been there for 30 seconds before she— It could have been there for 30 seconds. It could have been there for two hours. We don't know. We don't know anything about the long enough. Except it's reasonable, Your Honor— This is what I keep coming back to, and I know I'm beating a dead horse here, but there's a case out of the San Antonio Court of Appeals called Beachgate, and I cited it in my brief. And in that case, the court said that a jury could reasonably infer from the undisputed testimony about water seepage and from the evidence about where the plaintiff fell that the defendant knew that there would be water on the floor in that location after it rained. That's — that is not remarkably different from this case, Your Honor. This is an area right outside the kitchen. Houston's management testifies that they know that things can come out of the kitchen, things can fall on the floor, all of that. They know that that can happen. Was there any testimony as to what was expected of a person who spilled a substance on the floor? Was he to immediately tell someone? Was he to clean it up, or was he just to let it go? In terms of an employee? Yes. In terms of an employee, I'm going to be quite honest, Your Honor. That is — there was some testimony about that, but quite honestly, I don't think that made it into the briefs that may be in the record. Right. There was no testimony that an employee was expected to clean it up immediately when they fell. They had procedures. Like, for example, if you're walking away from the bar and you notice that the drinks that you're carrying slosh, then you're supposed to, you know, clean it up or notify somebody. Can we assume, then, that the substance on the floor was either spilled immediately before she fell or that an employee neglected his duty to wipe up what he or she spilled? Can you assume either or? Well, I mean, either one. One or the other happened. I mean, if it had been there for a while and the employee was supposed to clean it up and didn't do it. That's correct. Or if it was there and the employees were abiding by their instructions, it had been there only for a second. But, Your Honor, it seems highly unlikely that when you have witnesses that testify that in this entire tiled area you've got water droplets and greasy, sticky feet throughout this entire area, that it seems entirely unlikely that all of that is going to occur in an instant before Ms. McCarty falls. It's just the bare feet. Are you saying that it resulted from just natural traffic out of the kitchen to that area? I'm saying that when you look at all of the circumstances where this was, you know, when you cook with grease, it's the same. I think we have your argument. And you have some time for rebuttal. Yes, sir. Thank you. And now we'll hear Mr. Ortega, representing Hillstone Restaurant Group. May it please the Court. My name is David Ortega. I'm here representing the Applee-Hillstone Restaurant Group, which is operating the Houstons where the slip-and-fall accident occurred. I did want to start out with the initial point about what Mr. Austin had spoken about in terms of what is undisputed. I will say that all of the facts he had mentioned are disputed. Houston has always maintained that nothing was on the floor. It was not greasy. It was not sticky. There was no lettuce, nor was there water droplets on that floor that night. Well, disputed facts are why we have jury trials. Well, the reason why a summary judgment was appropriate in this case, even though there is a dispute about those sorts of facts, Your Honor, is that even assuming everything that the plaintiff has alleged in this case, there was not sufficient amount of evidence to actually go forward to a jury. The first and most obvious, and this was recognized by the district court in its order, which was just said by Mr. Austin, is that the plaintiff doesn't know what she slipped on. The only person who has ever testified in this case or given any sort of evidence regarding a greasy or sticky floor is Ms. McCarty. Her husband did not say that. Her friends that she went out to dinner that evening did not say that. No employee ever testified about that as well. And during her deposition, which is a part of the record and which was referenced by the district court, and asked, What did you slip on? Her response is, I don't know. Do I have to know? And because we don't know what, in fact, the allegation is of what was on the floor which actually caused the slip and fall accident, that really causes somewhat of a difficult conceptual problem for the plaintiffs, and that is because of the differences upon inferences. I believe what Mr. Austin has articulated during his presentation is showing the difficulty of, first, we have to infer that, in fact, Mrs. McCarty did slip and fall on some unidentifiable foreign substance on the floor. We have to infer it because there is no direct or circumstantial evidence of that. It is simply an inference because of the, I guess, the location of the tile floor. Secondly, the court must then infer that whatever that substance was, was on the floor long enough to constitute constructive notice pursuant to the Texas Supreme Court's requirement that the time notice rule. The other way we can get there is through another third inference, which is whether or not an employee placed the substance on the floor. So no matter what we look at, there is a double inference that has to occur for the plaintiffs to move forward with this case, and the double inference is impermissible as recognized both by the Texas Supreme Court as well as the Fifth Circuit. That is just one, that is the first of several issues that is wrong and deficient of the plaintiff's case. The second issue, or the second issue I would like to refer the court to, is regarding the lack of evidence regarding direct knowledge of this foreign substance on the floor. What we have been mostly talking about is the time notice rule, and the time notice rule goes to the constructive knowledge of the restaurant, of the foreign substance on the floor. But they can also, the plaintiffs can also hit the element of actual knowledge through actual knowledge. And the plaintiffs can hit actual knowledge, of course, if they're able to show that an employee actually caused the allegedly dangerous condition. In this case, there is no evidence of that. Well, I guess there's three ways they could do with the knowledge. They could show that Houston's either placed it there, or they knew that it was on the floor, or that it had been there long enough that they should have discovered that it was there. Aren't those the three? That is correct, Your Honor. Things under the Texas Supreme Court decision in Reed's? That is correct. And the reason why I was simply saying that there's two is because conceptually, whether or not Houston's placed the foreign substance on the floor, or they knew about it, both of those are direct knowledge. The other one is constructive knowledge. And so under the direct knowledge prong of a premises liability case, both are under the noticed element. The only evidence we have here is a typographical error from one of the former employees, who in a written statement said, I think to quote it, I did see any food debris, et cetera. And then prior to his deposition, he corrected that statement saying, I did not see any food debris, et cetera. And all he did was add the word not. That is correct, Your Honor. All he did was add the word not. He was subject to cross-examination about this. There was nothing in his deposition which in any way indicated that he actually did in fact see any foreign substance on the floor. The district court also pointed out, and this is in the briefing as well, is that let's just assume for the sake of argument that the written statement said, I did see some foreign substance on the floor. That written statement doesn't give any evidence of when he saw it. In fact, it would indicate when he saw it immediately preceding or immediately thereafter the slip-and-fall accident. There was simply no gap in between his actual knowledge and the actual accident which would allow Houstons to have remedied the allegedly dangerous condition. So under that, really what we're dealing here is that there is such a lack of knowledge is that we can either do double inferences, which isn't allowed, or we have to rely upon a typographical error in an employee's written statement which he's already testified to that was incorrect and he had simply corrected it at his behest to be grammatically correct. Your Honors, there has been no argument from the plaintiffs that this Court should interpret Texas law any differently than it has been before. There has been no argument that any holdings need to be extended or modified in this case. The law in Texas is very clear about premises liability claims. The evidence in this case is lacking on the notice element as well as other elements, but the district court limited its decision on the notice element. We'd ask that the court simply affirm the district court's position. If there is no further questions from the Court, I'd be willing to yield my time to the Court, but I believe I have sufficiently stated my client's position on this matter. Thank you, Mr. Ortega. Thank you. We'll hear from Mr. England now. Would you please address the issue of double inferences? Yes, Your Honor. That's what I was just about to do. There are no double inferences in this case. There's only one inference in this case. Ms. McCarty slipped. That's undisputed. It's likewise undisputed that there was a greasy substance on the floor. And her testimony is that her crutches slipped. Well, maybe you mean it's unrebutted. I'm sorry? Maybe you mean it's unrebutted. It's unrebutted. All right. It's unrebutted. And, frankly, I think it's undisputed, to be quite honest, because there's no evidence of anything else in the record. You're saying there must have been something. Is that what you're saying? Well, there must have been something on the floor. Is that what you're getting at, Your Honor? Yeah, I'm asking you if that's your contention, that there must have been something on the floor. There must have been something on the floor, yes. There must have been something on the floor because Ms. McCarty testified that when she was on the ground in the restaurant, the floor was sticky and greasy and we talk about when you're talking about a floor in a condition like that, Your Honor, what you're really doing is saying that it would be permissible for a restaurant to have a tiled area where accidents could happen and just turn out all the lights right there. And just because I can't see something while I'm walking across that tiled floor means that I'm out? That just can't be true. Well, what about her testimony? He said that when asked what she fell on, she says, I don't know. Does it matter? I mean, she didn't say, I fell because the floor was greasy. Well, but what she … She just said the floor was greasy. She didn't say it caused the accident, apparently. Your Honor, when she did testify to that, she then later testified that her crutch slipped out from under her on the floor that was greasy and slick. I mean, she said essentially both things during her deposition. She did testify unequivocally that her crutch slipped. That is – yes, yes. She absolutely testified that her crutch slipped. It was only a Hillstone employee that said, oh, it looked like she misstepped with her crutch. That wasn't Ms. McCarty's testimony. That was their testimony. That's a fact that she didn't have to sell. So the only inference that we're talking about here is the inference as expressed in the Beach Bay case. You've got this area right outside the kitchen where their employee testifies that the area could be slick because of food being tracked out of the kitchen or anything like that, water sloshed out. You've got this area. bathroom right outside the kitchen where their employees are going through every two to three minutes. The inference is you can reasonably infer that they had knowledge that that area was slick because they were going through that area constantly. That's the only inference that's necessary here. And that's a reasonable inference. It's not a double inference. It's a reasonable inference as to their knowledge of the condition of the floor. With that, if I've addressed all your questions, I will conclude. Thank you. Thank you, Mr. Connolly. Thank you, Your Honor. That concludes the cases we have on the oral argument calendar for this morning. So this panel stands in recess tomorrow morning at 9 o'clock.